**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

SUSAN M. WALSH,

Plaintiff,

v. CASE NO.:

LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC.,

Defendant.

_______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SUSAN M. WALSH (hereinafter "Ms. Walsh" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC. (hereinafter "Legal Aid" or "Defendant"), and states the following:

## INTRODUCTION

1. Plaintiff brings this action against Defendant, her former employer, to recover damages for disability discrimination, failure to provide reasonable accommodation, and retaliation in violation of Title I and

Title V of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101-12213, and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Chapter 760, Florida Statutes.

2. Plaintiff, a paralegal with Multiple Sclerosis who performed her job remotely for more than five years, alleges that Defendant terminated her employment while she was on approved disability leave, without any discussion of her ability to return to work or of any accommodation, and within weeks after she complained of continued retaliation and requested additional medical leave.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered damages including lost wages and benefits, loss of employer-provided health insurance, and emotional distress.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's ADA claims arise under a law of the United States. This Court has supplemental jurisdiction over Plaintiff's FCRA claims because they arise from the same facts and form part of the same case or controversy as her ADA claims.

5. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in the United States District Court for the Southern District of Florida, West Palm Beach Division, because Defendant maintains its principal office at 423 Fern Street, Suite 200, West Palm Beach, Palm Beach County, Florida, Defendant made and carried out the employment decisions at issue from that office, and Plaintiff's employment records are maintained there.

**PARTIES**

7. Plaintiff, SUSAN M. WALSH, is an adult individual who resides in Palm City, Florida. Throughout her employment, Plaintiff worked for Defendant remotely from her home in Florida, first in Deerfield Beach, Florida, and, beginning in August 2024, in Palm City, Florida.

8. At all times material, Plaintiff was an "employee" of Defendant and an individual with a "disability" within the meaning of the ADA, and an aggrieved person with a "handicap" within the meaning of the FCRA.

9. Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., is a Florida corporation that provides civil legal services and maintains

its principal office at 423 Fern Street, Suite 200, West Palm Beach, Florida 33401.

10. At all times material, Defendant employed approximately 194 employees, and Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Defendant is therefore an "employer" and a "covered entity" within the meaning of the ADA. Defendant is also an "employer" within the meaning of the FCRA because it employed fifteen or more employees in each of twenty or more calendar weeks in the current or preceding calendar year.

**ADMINISTRATIVE PREREQUISITES**

11. On July 24, 2026, Plaintiff signed and filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Florida Commission on Human Relations, and which the EEOC assigned Charge No. 510-2026-10971.

12. The Charge alleged that Defendant discriminated against Plaintiff because of her disability by terminating her employment, failed to engage in a good faith interactive process and failed to accommodate her

disability, and retaliated against her for her prior EEOC charge, for opposing discriminatory conduct, and for taking approved medical leave.

13. The Charge identified June 12, 2026, the effective date of Plaintiff's termination, as the most recent date of discrimination. Plaintiff filed the Charge within 300 days of each discrete act on which her claims are based.

14. By cover letter dated August 19, 2026, the EEOC advised Plaintiff that it would be issuing a Determination and Notice of Rights. The EEOC's Determination and Notice of Rights, issued and digitally signed on August 23, 2026, stated that the EEOC would not proceed further with its investigation and notified Plaintiff of her right to file suit within 90 days of receipt.

15. Plaintiff received the Determination and Notice of Rights on or about August 23, 2026, and Plaintiff filed this action within 90 days of her receipt of the Notice.

16. Plaintiff's Charge was dual filed with the Florida Commission on Human Relations, pursuant to the worksharing agreement between the EEOC and the Florida Commission on Human Relations, within 365 days of each discrete act on which her FCRA claims are based. The EEOC's August

23, 2026 Determination and Notice of Rights concluded the administrative processing of Plaintiff's dual-filed Charge. All conditions precedent to bringing this action have been performed, have occurred, or have been waived.

## GENERAL ALLEGATIONS

### Plaintiff's Employment and Disability

17. On September 15, 2020, Defendant hired Plaintiff as a remote paralegal at a starting salary of $42,000.00. Plaintiff was originally assigned to Defendant's Housing Unit and was later transferred to its Consumer Unit, where she remained.

18. Throughout her employment, Plaintiff reported to her supervisor, Tequisha Myles.

19. Plaintiff's duties included conducting new client intakes, running conflicts, opening matters, drafting motions and notices, calendaring, setting hearings, compiling and reviewing financial information, and communicating with opposing counsel and court personnel.

20. Plaintiff has Multiple Sclerosis, with a date of onset and diagnosis in 2005 and a relapsing-remitting disease course.

21. Plaintiff's Multiple Sclerosis causes progressive right leg weakness after minimal exertion that requires her to rely on a cane, and cognitive impairment, including difficulty recognizing names and recalling conversations.

22. Plaintiff's Multiple Sclerosis is a physical impairment that substantially limits one or more of her major life activities, including walking, standing, thinking, concentrating, and the operation of her neurological functions. Plaintiff also has a record of such an impairment, and Defendant regarded Plaintiff as having such an impairment.

23. On October 1, 2020, Ms. Myles informed Plaintiff that Defendant's Executive Director, Robert Bertisch, required a medical letter from Plaintiff's doctor if Plaintiff wished to continue working fully remote, and on October 5, 2020, Plaintiff provided a letter from her neurologist to Ms. Myles and Mr. Bertisch.

24. Accordingly, from the first weeks of Plaintiff's employment, Defendant, including Plaintiff's supervisor and Executive Director, had actual knowledge of Plaintiff's disability.

25. In July 2023, Defendant required Plaintiff to furnish additional medical letters to continue working remotely, and on July 26, 2023, Plaintiff provided a new medical letter from another neurologist.

26. Plaintiff performed her paralegal duties for Defendant remotely from September 2020 through her last day of work on March 27, 2026.

**Plaintiff's Protected Activity**

27. On April 29, 2024, the EEOC filed a charge of discrimination on Plaintiff's behalf against Defendant (the "2024 Charge"), after Plaintiff had visited the EEOC's Miami office on December 29, 2023, to file her complaint. The 2024 Charge alleged disability, age, and wage discrimination.

28. Defendant responded to the 2024 Charge by filing a Position Statement with the EEOC on September 11, 2024, and Plaintiff filed a rebuttal on October 11, 2024. Defendant, through its management and administration, therefore had actual knowledge of the 2024 Charge.

29. The EEOC issued Plaintiff a Notice of Suit Rights on the 2024 Charge on April 11, 2025.

30. On September 12, 2025, after learning that another paralegal had overheard the attorney Plaintiff assisted and an intake paralegal in her unit speaking disparagingly about Plaintiff in front of several employees,

Plaintiff immediately reported the conduct to Michael Spillane, Defendant's Director of Finance, and Ana Casey, Defendant's HR Generalist.

31. On October 8, 2025, Ms. Casey informed Plaintiff that the investigation into the reported conduct was complete, that the allegations were substantiated and had merit, and that there would be no retaliation.

32. On March 26, 2026, Plaintiff emailed Mr. Spillane to report continued retaliation and a hostile work environment and asked that her concerns be escalated to the President of Defendant's Board, the escalation process for unaddressed workplace harassment set out in Defendant's employee manual. Plaintiff never received a response.

33. Throughout her employment, Plaintiff repeatedly informed Defendant, including Mr. Spillane and Ms. Casey, that the work environment was affecting her physical and emotional health, and on numerous occasions requested that her complaints be escalated to the Board President in accordance with Defendant's employee manual, but Defendant never escalated her complaints.

34. On April 6, 2026, Plaintiff emailed Ms. Myles, copying Defendant's Director of Human Resources, June Leopold, and informed them that she needed to take additional sick time. Plaintiff's request for

additional medical leave because of her disability was a request for a reasonable accommodation.

**Defendant's Treatment of Plaintiff After Her Return From Leave**

35. On September 15, 2025, Plaintiff informed Ms. Myles that she needed to take sick time, and Ms. Myles instructed her to contact Ms. Casey about short-term disability. Plaintiff was on short-term disability leave from September 2025 to January 2026.

36. Plaintiff returned to work from short-term disability on January 12, 2026, and Ms. Myles had no contact or interaction with her until a meeting on February 2, 2026. On January 16, 2026, four days after her return, Plaintiff wrote to Ms. Casey and Mr. Spillane that concerns requiring Human Resources' attention remained, that she feared further retaliation, and that she wanted the matter escalated to Defendant's Board. Ms. Casey acknowledged receipt and stated that Defendant would review the concerns and respond, but Defendant never provided a substantive response.

37. At a February 2, 2026 Zoom meeting, Ms. Myles announced that Plaintiff would be assigned to an additional attorney, and within a few weeks Plaintiff's caseload increased from approximately 15 cases to more than 70 cases.

38. The intake paralegal who had been named in Plaintiff's substantiated September 2025 report was responsible for assigning cases to Plaintiff.

39. After her return in January 2026, Plaintiff continued to be excluded from important case review meetings.

40. The more than fourfold increase in Plaintiff's caseload and her exclusion from case review meetings would dissuade a reasonable worker from making or supporting a charge of discrimination or from requesting accommodation.

**Plaintiff's Disability Leave and Termination**

41. After Plaintiff's April 6, 2026 request for additional sick time, she filed a claim for long-term disability benefits under Defendant's policy with Mutual of Omaha. Ms. Leopold responded that Ms. Casey would guide Plaintiff through the process.

42. On May 19, 2026, Plaintiff emailed Ms. Casey to inform her that her long-term disability claim had been approved and requested information about Defendant's long-term disability policy.

43. On May 20, 2026, Ms. Casey responded that the benefits summary needed to be updated and would be sent to Plaintiff, but Plaintiff

received no further communication from anyone at Defendant until June 5, 2026.

44. Mutual of Omaha indicated that Plaintiff's long-term disability claim would be subject to a redetermination in August 2026.

45. On June 5, 2026, Ms. Leopold sent Plaintiff a letter stating that her employment would end effective June 12, 2026. Ms. Leopold sent the letter by email to Plaintiff's personal email address, copying several staff members, in an email that included sensitive information about Plaintiff's medical situation and need for long-term disability.

46. The termination letter stated that Defendant had received confirmation that Plaintiff had transitioned from short-term to long-term disability benefits, that Plaintiff had exhausted all available leave, and that "[b]ecause you are unable to return to active employment and all available leave entitlements have been exhausted, your employment with Legal Aid Society of Palm Beach County (LASPBC) will end effective June 12, 2026."

47. On its face, Defendant's termination letter based the decision to terminate Plaintiff's employment on Plaintiff's disability, her disability-related leave, and her receipt of disability benefits.

48. At no time before the termination did anyone at Defendant contact Plaintiff to discuss her return to work or her ability to return to work.

49. Before terminating Plaintiff, Defendant did not ask Plaintiff or her medical providers about the expected duration of her leave, whether a defined additional period of leave would permit her return, or whether any other accommodation, including continued remote work, a reduced caseload, or rest breaks during the workday, would enable her to perform the essential functions of her position. After her return in January 2026, Plaintiff was compelled to work through her lunch breaks to manage her increased caseload, and Defendant ignored her communications rather than engage with her about any adjustment to her duties.

50. At the time of her termination, Plaintiff was qualified for her paralegal position, had performed its essential functions remotely for more than five years, and, with reasonable accommodation, could have returned to perform those essential functions, including a finite additional period of leave through Mutual of Omaha’s August 2026 redetermination, followed by continued remote work and a manageable caseload.

51. At the time of the termination, Defendant also had an open investigation concerning Plaintiff’s complaints about Ms. Myles.

52. Defendant terminated Plaintiff approximately ten weeks after her March 26, 2026 complaint of continued retaliation, approximately eight weeks after her April 6, 2026 request for additional leave, and seventeen days after she notified Defendant that her long-term disability claim had been approved.

53. Upon information and belief, Ms. Leopold, Robert Bertisch, Tequisha Myles, and the other managers who participated in the decision to terminate Plaintiff knew of Plaintiff's disability, her 2024 Charge, her complaints of retaliation, and her request for additional leave at the time they made the decision.

**Damages**

54. As a result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, the loss of her health insurance, significant financial strain, and severe stress, anxiety, and depression. The termination of her employment, and the stress surrounding it, substantially worsened Plaintiff's Multiple Sclerosis and related conditions. On September 15, 2026, Plaintiff's neurologist determined that her Multiple Sclerosis had progressed from relapsing-remitting to secondary progressive, and her psychologist has

referred her to a trauma therapist. Plaintiff's COBRA continuation premium is $1,191.33.

55. Plaintiff has retained the undersigned counsel and is obligated to pay a reasonable fee for their services.

**Timeliness of Allegations**

56. Plaintiff alleges events occurring before September 27, 2025, which is 300 days before the filing of her Charge, as background evidence of Defendant's knowledge, motive, and intent, and not as independent discrete acts for which she seeks relief.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Disability Discrimination – Termination**
**42 U.S.C. §§ 12101-12213**

57. Plaintiff realleges and incorporates by reference paragraphs 4 through 6, 7 through 10, 11 through 16, 17 through 26, 41 through 53, 54 through 55, and 56 of this Complaint as though fully set forth herein.

58. At all times material, Plaintiff was an individual with a disability within the meaning of the ADA because her Multiple Sclerosis substantially limits one or more major life activities, she has a record of such an impairment, and Defendant regarded her as having such an impairment.

59. At all times material, Plaintiff was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of her paralegal position.

60. Defendant had actual knowledge of Plaintiff's disability.

61. Defendant discriminated against Plaintiff on the basis of disability in regard to the discharge of employees, in violation of 42 U.S.C. § 12112(a), by terminating her employment effective June 12, 2026.

62. But for Plaintiff's disability, Defendant would not have terminated her employment. Defendant's own termination letter tied the decision to Plaintiff's disability-related leave, her transition to long-term disability benefits, and its belief that she was unable to return to work, and Defendant reached that conclusion without any individualized inquiry or discussion with Plaintiff.

63. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

64. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered damages, including lost wages and benefits, past and future; lost earning capacity; loss of employer-provided health insurance; mental anguish; emotional distress; anxiety; depression; humiliation; loss of

dignity; loss of the capacity for the enjoyment of life; and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, SUSAN M. WALSH, demands judgment against Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., and respectfully requests that this Court grant the following relief:

A. Declare that Defendant discriminated against Plaintiff on the basis of disability by terminating her employment in violation of the ADA;

B. Award Plaintiff back pay and lost benefits, with prejudgment interest;

C. Award Plaintiff front pay;

D. Award Plaintiff compensatory damages for emotional distress, mental anguish, and other nonpecuniary losses;

E. Award Plaintiff punitive damages;

F. Award Plaintiff her reasonable attorneys' fees, expert fees, and costs; and

G. Grant such other and further relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Failure to Provide Reasonable Accommodation
## 42 U.S.C. §§ 12101-12213

65. Plaintiff realleges and incorporates by reference paragraphs 4 through 6, 7 through 10, 11 through 16, 17 through 26, 41 through 53, 54 through 55, and 56 of this Complaint as though fully set forth herein.

66. At all times material, Plaintiff was an individual with an actual disability, and a record of a disability, within the meaning of the ADA.

67. At all times material, Plaintiff was a qualified individual who could perform the essential functions of her paralegal position with reasonable accommodation.

68. On April 6, 2026, Plaintiff requested additional medical leave because of her disability, and Defendant knew that Plaintiff's long-term disability claim had been approved and would be redetermined in August 2026.

69. A reasonable accommodation existed that would have allowed Plaintiff to perform the essential functions of her position, including a finite additional period of leave through the August 2026 redetermination, followed by continued remote work and a manageable caseload. Such an

accommodation would not have imposed an undue hardship on Defendant, which had permitted Plaintiff to work remotely since 2020.

70. Rather than provide a reasonable accommodation, or engage with Plaintiff in any good faith effort to identify one, Defendant terminated Plaintiff's employment without communicating with her about her return to work, her ability to return, or any possible accommodation.

71. By failing to make reasonable accommodation to Plaintiff's known physical limitations, Defendant discriminated against Plaintiff in violation of the ADA.

72. Defendant did not make a good faith effort to identify and make a reasonable accommodation for Plaintiff.

73. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered damages, including lost wages and benefits, past and future; lost earning capacity; loss of employer-provided health insurance; mental anguish; emotional distress; anxiety; depression; humiliation; loss of dignity; loss of the capacity for the enjoyment of life; and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, SUSAN M. WALSH, demands judgment against Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY,

INC., and respectfully requests that this Court grant the following relief:

A. Declare that Defendant failed to provide Plaintiff a reasonable accommodation for her known disability in violation of the ADA;

B. Award Plaintiff back pay and lost benefits, with prejudgment interest;

C. Award Plaintiff front pay;

D. Award Plaintiff compensatory damages for emotional distress, mental anguish, and other nonpecuniary losses;

E. Award Plaintiff punitive damages;

F. Award Plaintiff her reasonable attorneys' fees, expert fees, and costs; and

G. Grant such other and further relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Retaliation
## 42 U.S.C. §§ 12101-12213

74. Plaintiff realleges and incorporates by reference paragraphs 4 through 6, 7 through 10, 11 through 16, 27 through 34, 35 through 40, 41

through 53, 54 through 55, and 56 of this Complaint as though fully set forth herein.

75. Plaintiff engaged in statutorily protected activity under the ADA by: filing and participating in the 2024 Charge alleging disability discrimination; complaining to Defendant on January 16, 2026 that she feared further retaliation and requesting escalation to the Board; complaining to Defendant on March 26, 2026 of continued retaliation and a hostile work environment and requesting escalation to the Board President; requesting additional medical leave as an accommodation for her disability on April 6, 2026; and filing the Charge on which this action is based.

76. Defendant subjected Plaintiff to materially adverse actions that would dissuade a reasonable worker from engaging in protected activity, including increasing her caseload from approximately 15 to more than 70 cases within weeks of her return in February 2026, excluding her from case review meetings after her return, and terminating her employment effective June 12, 2026.

77. Defendant's decision-makers knew of Plaintiff's protected activity when they took these actions. Defendant responded to the 2024 Charge with a written Position Statement, Plaintiff directed her March 26,

2026 complaint to Mr. Spillane, and Plaintiff directed her April 6, 2026 accommodation request to Ms. Myles and Ms. Leopold, who issued the termination letter.

78. A causal connection exists between Plaintiff's protected activity and the adverse actions, as shown by the close temporal proximity between her March 26, 2026 complaint and April 6, 2026 accommodation request and her June 5, 2026 termination; Defendant's failure to respond to her complaints or escalate them as its employee manual required; the assignment of her cases by a coworker named in her substantiated report; and Defendant's decision to terminate her without any discussion of her return to work while an investigation into her complaints remained open.

79. But for Plaintiff's protected activity, Defendant would not have taken these adverse actions against her.

80. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

81. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages and benefits, past and future; lost earning capacity; loss of employer-provided health insurance; mental anguish; emotional distress; anxiety; depression; humiliation; loss of

dignity; loss of the capacity for the enjoyment of life; and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, SUSAN M. WALSH, demands judgment against Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., and respectfully requests that this Court grant the following relief:

A. Declare that Defendant retaliated against Plaintiff for engaging in protected activity in violation of the ADA;

B. Award Plaintiff back pay and lost benefits, with prejudgment interest;

C. Award Plaintiff front pay;

D. Award Plaintiff compensatory damages for emotional distress, mental anguish, and other nonpecuniary losses;

E. Award Plaintiff punitive damages;

F. Award Plaintiff her reasonable attorneys' fees, expert fees, and costs; and

G. Grant such other and further relief as this Court deems just and proper.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Disability Discrimination – Termination
## FLORIDA STATUTES §§ 760.01-11

82. Plaintiff realleges and incorporates by reference paragraphs 4 through 6, 7 through 10, 11 through 16, 17 through 26, 41 through 53, 54 through 55, and 56 of this Complaint as though fully set forth herein.

83. At all times material, Plaintiff was a person with a handicap within the meaning of the FCRA because her Multiple Sclerosis substantially limits one or more major life activities, she has a record of such an impairment, and Defendant regarded her as having such an impairment.

84. At all times material, Plaintiff was qualified for her paralegal position and could perform its essential functions with or without reasonable accommodation, and Defendant had actual knowledge of her handicap.

85. Defendant violated Section 760.10, Florida Statutes, by discharging Plaintiff because of her handicap, terminating her employment effective June 12, 2026.

86. But for Plaintiff's handicap, Defendant would not have terminated her employment. Defendant's termination letter tied the decision

to her disability-related leave, her transition to long-term disability benefits, and its belief that she was unable to return to work, a conclusion Defendant reached without any individualized inquiry or discussion with Plaintiff.

87. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's rights under the FCRA.

88. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered damages, including lost wages and benefits, past and future; lost earning capacity; loss of employer-provided health insurance; mental anguish; emotional distress; anxiety; depression; humiliation; loss of dignity; loss of the capacity for the enjoyment of life; and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, SUSAN M. WALSH, respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act and demands judgment against Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., for the following relief:

A. Declaring that Defendant discriminated against Plaintiff because of her handicap by terminating her employment in violation of the FCRA;

B. Awarding Plaintiff back pay, front pay in lieu of reinstatement,

prejudgment interest, and damages for all employment benefits she would have received but for Defendant's unlawful conduct;

C. Awarding Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action pursuant to Section 760.11, Florida Statutes; and

F. Granting such other and further relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Failure to Provide Reasonable Accommodation
## FLORIDA STATUTES §§ 760.01-11

89. Plaintiff realleges and incorporates by reference paragraphs 4 through 6, 7 through 10, 11 through 16, 17 through 26, 41 through 53, 54 through 55, and 56 of this Complaint as though fully set forth herein.

90. At all times material, Plaintiff was a person with an actual handicap, and a record of a handicap, within the meaning of the FCRA, and was a qualified individual who could perform the essential functions of her position with reasonable accommodation.

91. On April 6, 2026, Plaintiff requested additional medical leave because of her handicap, and Defendant knew that her long-term disability claim had been approved and would be redetermined in August 2026.

92. A reasonable accommodation existed that would have allowed Plaintiff to perform the essential functions of her position, including a finite additional period of leave through the August 2026 redetermination, followed by continued remote work and a manageable caseload, and that accommodation would not have imposed an undue hardship on Defendant.

93. Rather than provide a reasonable accommodation, or engage with Plaintiff in any good faith effort to identify one, Defendant terminated her employment without communicating with her about her return to work, her ability to return, or any possible accommodation.

94. By failing to reasonably accommodate Plaintiff's known handicap, Defendant discriminated against Plaintiff in violation of the FCRA.

95. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered damages, including lost wages and benefits, past and future; lost earning capacity; loss of employer-provided health insurance; mental anguish; emotional distress; anxiety; depression;

humiliation; loss of dignity; loss of the capacity for the enjoyment of life; and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, SUSAN M. WALSH, respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act and demands judgment against Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., for the following relief:

A. Declaring that Defendant failed to reasonably accommodate Plaintiff's known handicap in violation of the FCRA;

B. Awarding Plaintiff back pay, front pay in lieu of reinstatement, prejudgment interest, and damages for all employment benefits she would have received but for Defendant's unlawful conduct;

C. Awarding Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action pursuant to Section 760.11, Florida Statutes; and

F. Granting such other and further relief as this Court deems just and proper.

**COUNT VI**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Retaliation**
**FLORIDA STATUTES §§ 760.01-11**

96. Plaintiff realleges and incorporates by reference paragraphs 4 through 6, 7 through 10, 11 through 16, 27 through 34, 35 through 40, 41 through 53, 54 through 55, and 56 of this Complaint as though fully set forth herein.

97. Plaintiff engaged in statutorily protected activity under Section 760.10(7), Florida Statutes, by opposing practices made unlawful by the FCRA and by making a charge and participating in proceedings under the FCRA and its federal counterpart, including filing and participating in the 2024 Charge alleging disability discrimination, complaining on January 16, 2026 that she feared further retaliation, complaining on March 26, 2026 of continued retaliation and a hostile work environment, requesting additional medical leave as an accommodation for her handicap on April 6, 2026; and filing the Charge on which this action is based.

98. Defendant subjected Plaintiff to materially adverse actions that would dissuade a reasonable worker from engaging in protected activity, including increasing her caseload from approximately 15 to more than 70

cases within weeks of her return in February 2026, excluding her from case review meetings, and terminating her employment effective June 12, 2026.

99. Defendant's decision-makers knew of Plaintiff's protected activity when they took these actions, and the close temporal proximity between Plaintiff's March 26 and April 6, 2026 protected activity and her June 5, 2026 termination, together with the other facts alleged above, establishes a causal connection.

100. But for Plaintiff's protected activity, Defendant would not have taken these adverse actions against her.

101. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's rights under the FCRA.

102. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages and benefits, past and future; lost earning capacity; loss of employer-provided health insurance; mental anguish; emotional distress; anxiety; depression; humiliation; loss of dignity; loss of the capacity for the enjoyment of life; and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, SUSAN M. WALSH, respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act

and demands judgment against Defendant, LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., for the following relief:

A. Declaring that Defendant retaliated against Plaintiff for engaging in protected activity in violation of the FCRA;

B. Awarding Plaintiff back pay, front pay in lieu of reinstatement, prejudgment interest, and damages for all employment benefits she would have received but for Defendant's unlawful conduct;

C. Awarding Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action pursuant to Section 760.11, Florida Statutes; and

F. Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable as of right.

Dated this 20th day of November 2026.

*<u>/s/ Jason W. Imler</u>*
Jason W. Imler, Esq.

Florida Bar Number: 1004422
*/s/ Alberto "Tito" Gonzalez*
Alberto "Tito" Gonzalez, Esq.
Florida Bar Number: 1037033
*/s/ Carol Bello*
Carol Bello, Esq.
Florida Bar Number: 1045715
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
Phone: 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Carol@ImlerLaw.com
Counsel for Plaintiff